UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VALISSA SHAW,

    Plaintiff,

v.                                           CASE NO. 8:14-cv-3059-T-27MAP

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of the Commissioner's decision denying her claim for supplemental security income (SSI) and disability insurance benefits (DIB). She makes two arguments; one directed at the ALJ's decision at step five of the sequential analysis pertaining to her residual functional capacity (RFC), and the other aimed at the Appeals Council's refusal to review her case when she says she presented new, relevant evidence about her impairments. After considering the record, I find the Commissioner followed the regulatory scheme and supported the decision with substantial evidence. Accordingly, I recommend the Commissioner's decision be affirmed and the complaint be dismissed.[1]

*A. Background*

    Plaintiff, who was 46 years old at the time of the administrative decision, has an

---

[1] This matter was referred to me under Local Rule 6.01(c)(21).

eleventh grade education and has worked as a certified nurse assistant, a training instructor for mentally impaired individuals, and a daycare worker. She alleges she has been unable to work since July 2009 due to a host of impairments: chronic obstructive pulmonary disease (COPD), carpal tunnel syndrome, degenerative disc disease, degenerative joint disease, diabetes mellitus, headaches, hypertension, Meralgia Paresthetica, and obesity. The ALJ found all these impairments were severe and that they prohibited her from performing her past work. Nonetheless, the ALJ concluded with aid of a vocational expert (VE) that they did not prohibit her from doing other work in the national economy. Plaintiff administratively appealed, and the Appeals Council denied review despite her submission of evidence she claimed was new. With ALJ's decision being the Commissioner's final one, Plaintiff filed this action seeking judicial review.

### B.  Standard of Review

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520; 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a); 416.920(a). Under this process, the Secretary must determine, in sequence, the following: whether the plaintiff is currently engaged in substantial gainful activity; whether the plaintiff has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and

whether the plaintiff can perform her past relevant work. If the plaintiff cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if the plaintiff can do other work in the national economy in view of her age, education, and work experience. A plaintiff is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137 (1987); 20 CFR §§ 404.1520(f), 416.920(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports them. *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064 (11th Cir. 1994). A court may not reweigh the evidence nor substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

C. Discussion

   1. carpal tunnel and migraines

Plaintiff's first issue – "[t]he ALJ's decision is not based on substantial evidence, when he found carpal tunnel syndrome and headaches to be severe impairments, yet failed to include resultant limitations in the RFC" – is capable of two interpretations. *See* doc. 10

at 10. The ALJ's RFC finding is not supported by substantial evidence; namely, the ALJ should have included the functional limitations associated with migraines (lost work days) and carpal tunnel syndrome (reduced dexterity, hand strength, inability to finger objects) because the substantial evidence supported their inclusion. Or, the ALJ's formulation of the RFC was erroneously incomplete even when considering his findings as to the limitations caused by her carpal tunnel syndrome and migraines because the ALJ is required to look at severe and non-severe impairments. Both versions, however, miss the more accurate question: Did the ALJ at step five satisfy his burden of proof that Plaintiff was not disabled? To meet that burden, the ALJ relied on the testimony of the VE. As a result, the real gravamen of Plaintiff's complaint, no matter how she states it, focuses on the ALJ's RFC findings at that step and his use of those findings in formulating his hypothetical to the VE. In sum, the ALJ's RFC findings served as predicate to the hypothetical.[2] Accordingly, the more succinct question is whether the ALJ should have included in his hypothetical to the VE the functional limitations her carpal tunnel and migraine impairments? The standard for determining the answer is straightforward: the ALJ must pose an accurate hypothetical that takes into account all Plaintiff's impairments the objective evidence supports, allowing for

---

[2] The regulations define RFC as the most work a person can do despite any limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence when assessing a person's RFC. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware . . . .'"). This includes both severe and non-severe impairments for determining if the claimant has the ability to "meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Ultimately, the RFC determination is reserved for the ALJ.

the exclusion of any limitation not found credible. *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

This is not instance where an ALJ failed to make well-articulated findings as to Plaintiff's impairments. *See Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (ALJ failed to make any reference to certain impairments evident from the medical record). Here, the ALJ discussed her migraines and carpal tunnel syndrome in detail. For example, Plaintiff has a history of migraines dating back to her childhood, which is a common feature among migraineurs. And while Plaintiff's medical records report that she is a migraineur, the medical records do not support the proposition that she continued to complain about "chronic migraines" after her physician prescribed a migraine prophylaxis (propanol) and a migraine abortive medication (imitrex) on October 18, 2011. *See* R. 482-488. At most, the medical records after this date repeat Plaintiff's history of headaches (and her history of other conditions), but these records are noticeably silent for complaints about continuing migraines. I read Plaintiff's medical records to suggest that the physician's prescribed anti-migraine intervention improved and controlled Plaintiff's migraine activity.[3] The ALJ undoubtedly read the records and made the same deduction. Likewise, the medical evidence

---

[3] The medical records report Plaintiff suffers from "chronic migraines." That has a specific connotation according to the American Headache Society. A "chronic migraine" means the migraineur suffers from migraines or headaches 15 or more days a month, meaning Plaintiff would need to suffer from migraines or headache more often than not. *See* http://www.achenet.org/resources/chronic_migraine_the_basics/. It is more likely that Plaintiff's treating physician applied the term to mean that Plaintiff had a chronic history of migraines.

5

supports the ALJ's conclusions about the effects of Plaintiff's carpal tunnel. Plaintiff's neurologist, Dr. Delgado, noted that Plaintiff "had no significant weakness in the hands" (R. 494). He ordered a nerve conduction study to test for carpal tunnel syndrome (R. 497), but that was never completed (R. 58). Dr. Kutner found that Plaintiff had "normal fine finger movements" and was "able to manipulate small objects with no difficulty" (R. 330). And, the state agency medical examiner, Dr. Troiano, reported that her "manual dexterity" was well preserved (R. 368).

Although the ALJ found these impairments severe for step two purposes, that only means that these impairments were not so slight and their effects not so minimal on her ability to work. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *Brady v. Heckler*, 724 F.2d 914 (11th Cir.1984). "Severity" in step two's vernacular means a medically ascertained impairment that impacts one's ability to work as opposed to some deviation from purely medical standards of bodily perfection or normality. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Plaintiff's evidentiary threshold at step two only required she make a modest, threshold showing; something severe enough (in contrast to a minor medical condition) to justify proceeding to the next sequential step. *Bowen*, 482 U.S. at 153-154. Plaintiff seems to take this regulatory definition of "severe" and then elevate the term to its dictionary equivalent – "marked" or "serious." *Webster's New Collegiate Dictionary* (1979). Instead, the ALJ's task was to evaluate Plaintiff's pain testimony for credibility against the objective medical evidence, using the regulatory measuring stick. Namely, the ALJ was required to consider all Plaintiff's symptoms,

including pain, and the extent to which these symptoms could reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529 and 416.929.[4]

While it would have been preferable for the ALJ, when questioning the VE, to have accounted for these two impairments (by noting their minimal impact), the ALJ's failure to add them to his predicate was not error. The ALJ hewed to the correct standard, decided that the medical evidence failed to support her testimony about the limitations posed by her carpal tunnel syndrome and her migraines, and justifiably omitted those limitations from the hypothetical.[5]

### 2. Appeals Council

Finally, Plaintiff asserts that the Appeals Council (AC) erred when it found that allegedly new evidence – a November 18, 2013 RFC questionnaire from Dr. Latt – did not provide a basis for changing the ALJ's decision (doc. 17 at 13). The Commissioner argues there was no error because Dr. Latt's RFC questionnaire does not undermine the substantial

---

[4] "Objective evidence" means medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1529. "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1512(b)(2)-(6) and 416.912(b)(2)-(6).

[5] Although the ALJ did not include in his predicate the functional limitation of reduced handling, Plaintiff's counsel asked the VE to assume that limitation. The VE opined the limitation would eliminate her working as an assembler but would not prohibit her from performing jobs as a call-out operator or surveillance system monitor (both sedentary positions) (R. 58-61). Hence, even assuming the ALJ erred in failing to include the limitation, as Plaintiff argues, that error was harmless.

evidence on which the ALJ's decision was based (doc. 20 at 8).

> If a claimant submits new noncumulative and material evidence to the AC after the ALJ's decision, the AC shall consider such evidence, but only where it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b). "Material" evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763 (11th Cir. 1987). When evidence is submitted for the first time to the AC, that new evidence becomes part of the administrative record. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994). The AC considers the entire evidence, including the new, material, and chronologically relevant evidence, and will review the ALJ's decision if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §404.970(b). We review whether the new evidence renders the denial of benefits erroneous." *Ingram v. Comm. of Social Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007). "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error or law." *Keeton*, 21 F.3d at 1066.

*Smith v. Social Security Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*).

Here, the AC looked at the RFC questionnaire but concluded that because it was dated November 18, 2013, it could not affect the decisions about whether Plaintiff was disabled through the date of the ALJ decision – May 1, 2013 (R. 2). As in *Smith*, the AC properly declined to review the ALJ's decision in light of the evidence submitted because the evidence was not new or material. *Smith,* 272 F. App'x at 801 (citation omitted). Rather, the RFC questionnaire relates to Plaintiff's RFC as of November 18, 2013 – after the ALJ's decision. Moreover, Dr. Latt, who completed the questionnaire, never treated Plaintiff during the relevant time period (R. 19). Dr. Latt's physician group (Jay Care Medical Center) saw Plaintiff during the relevant time period, and Dr. Latt admittedly relied on his group's records in forming his opinion on Plaintiff's RFC (R. 19). However, the ALJ already

8

considered the medical records from Jay Care Medical Center in determining Plaintiff's RFC (e.g., R. 453-92).

Finally, there is no reasonable possibility that the "new evidence" would have changed the administrative result. As the Commissioner points out, Dr. Latt merely checked boxes on a form and failed explain how his findings were supported by the medical records. "A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 871 (11th Cir. 2012). Moreover, Dr. Latt's findings are wholly inconsistent – both internally and with the record evidence. For example, Dr. Latt says that Plaintiff does not need a job that permits shifting positions (e.g., from sitting to standing to walking) at will, but also says that Plaintiff can only sit or stand for 5 minutes at a time, and that Plaintiff does not need to sit in a recliner or lie down each day (R. 17-18). For all these reasons, I find that the AC did not err by finding Dr. Latt's RFC questionnaire did not provide a basis for changing the ALJ's decision and denying review.

### D. Conclusion

For the reasons stated, I recommend

1. That Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2. That the Clerk be directed to enter judgment for the Commissioner.

IT IS SO REPORTED at Tampa, Florida on December 8, 2015.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.